IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **LYNN B. BLAND,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:11-CV-277(MTT) |
| | ) |
| **METROPOLITAN LIFE INSURANCE COMPANY,** | ) |
| | ) |
| Defendant. | ) |

### ORDER

Before the Court are the Parties' Cross Motions for Judgment as a Matter of Law. (Docs. 16 and 17). For the following reasons, the Defendant's Motion is **GRANTED**, and the Plaintiff's Motion is **DENIED**. The Court makes the following Findings of Facts and Conclusions of Law.

### I.   FINDINGS OF FACT

Plaintiff Lynn Bland is a fifty-eight year old female who was employed by Novartis Pharmaceuticals Corporation until she became disabled. (Doc. 17-2 at 1). While employed by Novartis, the Plaintiff was a participant in Novartis' Welfare Benefits Plan (the "Plan"). (Doc. 17-2 at 2; Doc. 16-1 at 1). The Plan is a self-funded employee welfare benefit plan and is governed by the Employer Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA). The Plan is administered by Defendant

Metropolitan Life Insurance Company. (Doc. 17-2 at 2; Doc. 16-1 at 1-2).[1]

In 2004, the Plaintiff injured her back in an automobile accident. (Doc. 16-8 at 85).[2] She had back surgery because of this injury in 2005. Specifically, she underwent an L5 laminectomy with discectomy and fusion at L5-S1. (Doc. 16-8 at 50). The procedure required the permanent placement of connecting rods. (Doc. 16-8 at 50). The Plaintiff returned to work following the surgery. (Doc. 16-8 at 85). However, on July 21, 2007, the Plaintiff fell while climbing stairs and reinjured her back. She filed a timely claim for short-term disability (STD) benefits under the Plan. (Doc. 17-2 at 3-4; Doc. 16-1 at 5; Doc. 16-14 at 20-23). The Defendant agreed the Plaintiff was disabled, and she received STD benefits from July 23, 2007, through January 20, 2008. During this time period, the Plaintiff was examined by several doctors. The Plaintiff was diagnosed with severe back pain and radiculopathy by Dr. Marcus Simmons. (Doc. 16-14 at 18-19). Dr. Charles H. Richardson also documented the Plaintiff suffered from "post lumbar discectomy and fusions with rods L5-S1." (Doc. 16-13 at 93). Dr. Harvey Jones diagnosed the Plaintiff with acute anxiety depression, herniated disc at L4-5, status post lumbar laminectomy syndrome and status post cervical discectomy and fusion. (Doc. 16-13 at 73-75, 78-79).

The Plaintiff began receiving long-term disability (LTD) benefits on January 21, 2008, when the STD maximum benefit period of 26 weeks expired. (Doc. 16-5 at 4). The Defendant continued to agree that the Plaintiff was disabled, primarily because of

---

[1] For reasons that will become apparent, the Defendant stresses that Novartis, not Metropolitan Life Insurance Company, drafted the Plan. The Defendant only administers the Plan.

[2] Because the relevant Plan documents and administrative record have been electronically filed at Documents 16-2 through 16-14, this Order cites to the record by using the document number and electronic screen page shown at the top of each page by the Court's CM/ECF software rather than the administrative record cites.

her diagnosis of post laminectomy syndrome with lumbar radiculopathy. (Doc. 16-7 at 11). In December 2009, the Defendant notified the Plaintiff that her LTD benefits would terminate on January 20, 2010.  The Defendant had determined that based on her medical records the Plaintiff was disabled because of a "neuro-musculoskeletal or soft tissue disorder,"[3] and thus her LTD benefits were limited to 24 months. The applicable Plan language is:

> Benefit Payment Limit for Certain Conditions: Monthly LTD benefits under this plan are payable *for up to a maximum of 24 months during your* lifetime if you are disabled because of mental nervous disorder or disease or neuro-musculoskeletal or soft tissue disorder, unless the disability results from: schizophrenia, bipolar disorder, dementia, organic brain disease.

(Doc. 16-4 at 7) (emphasis in original). Notably, the Plan does not contain any exceptions to this limitation—coverage for any neuro-musculoskeletal disorder is limited to 24 months. (Doc. 16-4 at 7).  Nor does the Plan define the term neuro-musculoskeletal.

The Plaintiff appealed the Defendant's decision to terminate her benefits.[4] The Defendant then requested a review of the Plaintiff's claim by an "Independent Physician Consultant" or IPC. (Doc. 16-8 at 75-78). The IPC physician, Heidi Klingbeil, agreed that the Plaintiff's medical records supported her doctors' conclusions regarding her back problems. (Doc. 16-8 at 79-83). Dr. Klingbeil's final assessment was:

---

[3] Though both Parties and various claims documents occasionally refer to the Plan's phrase "neuro-musculoskeletal or soft tissue disorder" it is clear that the Plaintiff's LTD benefits were limited because the Defendant contends she was disabled due to a neuro-musculoskeletal disorder, not a soft tissue disorder.

[4] In the appeal the Plaintiff alleged that her disability was caused by a mental and nervous disorder. (Doc. 16-1 at 13-14). This argument on appeal was apparently an attempt to bring her claim within one of the Plan's exceptions to a LTD benefits limitation on mental and nervous disorders. The Plaintiff has not raised this argument before the Court. Instead, she argues that her physical conditions are not neuro-musculoskeletal disorders. *See infra* II.E.

> Given [the] totality of clinical information, the claimant would be considered functionally impaired and unable to safely perform any occupations secondary to continued use of high dose oral medications secondary to intractable pain.

(Doc. 16-8 at 51). Thus, Dr. Klingbeil agreed that, from a medical standpoint, the Plaintiff was totally disabled.

The Defendant nevertheless denied the appeal. In its denial letter, the Defendant acknowledged that the Plaintiff "has a failed back syndrome secondary to previous fusion performed at L5-S1," that the Plaintiff had not responded to medication, physical therapy, and the implantation of a spinal cord stimulator to control pain, and that because of these and other related conditions, the Plaintiff was "unable to safely perform any occupations." (Doc. 16-8 at 49-52). However, these conditions, the Defendant concluded, were "neuromusculoskeletal in nature" and thus the Plaintiff was not entitled to continued benefits. (Doc. 16-8 at 49-52). This action followed.

Both Parties have moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 52. (Docs. 16 and 17). Following a hearing, the Court ordered the Defendant to submit portions of its claim manual and guidelines addressing the term neuro-musculoskeletal disorder. The Court further requested the Parties submit supplemental briefs on the potential applicability of New Jersey state law, because the Plan eventually produced by the Defendant provides that the Plan "shall be interpreted, construed, and administered in accordance with the laws of the State of New Jersey to the extent such laws are not preempted by the law of the United States." (Doc. 25-1 at 40).

## II. DISCUSSION AND CONCLUSIONS OF LAW

### A. Motion for Judgment as a Matter of Law Standard

Both Parties move, pursuant to Federal Rule of Civil Procedure 52, for judgment as a matter of law. Here, the Parties agree that the Court's review of this case is limited to the administrative record, and when a decision is based on an agreed-upon administrative record, findings of fact and conclusions of law pursuant to Rule 52 are preferred. *Adams v. Hartford Life & Accident Ins., Co.*, 694 F. Supp. 2d 1342, 1345 n. 1 (M.D. Ga. 2010). "In an action tried on the facts without a jury … the court must find the facts specially and state its conclusions of law separately. The findings and conclusions … may appear in an opinion or memorandum of decision filed by the court." Fed. R. Civ. Pro. 52(a)(1).

Accordingly, the Court bases its Findings of Fact and Conclusions of Law on the administrative record available to the Defendant when it made its decision to deny benefits. *See Glazer v. Reliance Standard Life Ins. Co.,* 524 F.3d 1241, 1246 (11th Cir.2008) ("When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard ..., the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.") (internal quotations omitted)); *Jett v. Blue Cross & Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1139 (11th Cir.1989) (same).

### B. ERISA Analytical Framework

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1132(a)(1)(B)). ERISA itself does not provide a standard for

courts reviewing benefits decisions made by plan administrators or fiduciaries. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)).  Based on guidance from the Supreme Court in *Glenn* and *Firestone*, the Eleventh Circuit "established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions."  *Id.*  The steps are:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355 (internal citation omitted).

### C. Burden of Proof

A claimant suing under ERISA has the burden of proving entitlement to plan benefits.  *Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (internal citation omitted).  However, "if the insurer claims that a specific policy exclusion

applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage." *Id.* (internal citation omitted).  The Plaintiff argues that the Plan's LTD limitation is akin to a policy exclusion, and thus the Defendant carries the burden of proving the applicability of the LTD benefit limitation it relied on when terminating the Plaintiff's benefits.   The Defendant argues that "'the limitation provision at issue is not an exclusion from benefits, rather it merely limits the amount of benefits that may be received once a claim has been granted.'"  (Doc. 21 at 3) (quoting *Doe v. Hartford Life & Accident General Am. Life. Ins. Co.*, 2008 WL 5400984, *4 n.1 (D.N.J.)).

      The Defendant further cites two Northern District of Georgia cases, *Aleksiev v. Metropolitan Life Insurance Co.*, No. 1:10-cv-3322-SCJ, (N.D. Ga. 2012) and *Craig v. Metropolitan Life Insurance Co.*, No. 1:10-cv-3231-CAP, (N.D. Ga. 2012), to support its argument the burden of proof with regard to the 24-month limitation on LTD benefits for neuro-musculoskeletal disorder rests with the Plaintiff.  But, as the Defendant acknowledges, *Craig* is currently pending before the Eleventh Circuit and the plaintiff-appellant has raised this exact burden of proof issue.  (Doc. 21 at 5 n. 2).  The Eleventh Circuit has scheduled oral argument in *Craig* for January 2013.

      The Court declines to determine whether the Plaintiff or the Defendant has the burden of proving that the Plaintiff is or is not disabled because of a limiting condition because, regardless of who has this burden, the Defendant's decision to deny the Plaintiff coverage because she was disabled from a neuro-musculoskeletal disorder is not de novo wrong.

**D. Potential Applicability of New Jersey Law**

A supplement to the Plan submitted by the Defendant at the hearing states that the Plan "shall be interpreted, construed, and administered in accordance with the laws of the State of New Jersey to the extent such laws are not preempted by the law of the United States." (Doc. 25-1).   The Defendant argues that New Jersey law does not apply because "(1) ERISA is a law of the United States; and (2) ERISA preempts New Jersey law." (Defendant's Supplemental Brief at 7).  The Plaintiff, citing *Buce v. Allianz Life Insurance Co.*, 247 F.3d 1133 (11th Cir. 2001) and *Capone v. Aetna Life Insurance Co.*, 592 F.3d 1189 (11th Cir. 2010), argues that, because of the Plan's choice of law provision, New Jersey state law should be used to define the term neuro-musculoskeletal.

First, the Court agrees with the Plaintiff's contention that, because the Plan has a choice of law provision, if there were applicable New Jersey law that did not conflict with ERISA, then the application of the law to this case could be appropriate.  However, New Jersey law does not address the issue here:  Whether Novartis can write a Plan effectively limiting disability coverage for any type of neck, back and spinal condition to 24 months of LTD benefits.

The Plaintiff cites New Jersey cases supporting her primary argument—that neuro-musculoskeletal disorders are related to chiropractic and osteopathic treatment.  The validity of this argument is addressed more specifically below.[5]  But, briefly, the fact that New Jersey cases generally have referred to neuro-musculoskeletal disorders in this context sheds no light on the issue before this Court.  Therefore, although the Plan contains a choice of law provision, because New Jersey law does not address the issue

---

[5] *See infra* II.E.

the Court faces, no New Jersey state law is applicable.

### E. The Defendant's Decision to Terminate the Plaintiff's LTD Benefits Was Not De Novo Wrong

"A decision is wrong if, after a review of the decision of the administrator from a de novo perspective, the court disagrees with the administrator's decision." *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008) (internal quotations and citation omitted). The Court "must consider, based on the record before the administrator at the time its decision was made, whether the court would reach the same decision as the administrator," and "[i]f the [C]ourt determines that the plan administrator was right, the analysis ends and the decision is affirmed." *Id.* at 1246-47 (internal citation omitted).

As discussed above, the Plaintiff's physicians and the Defendant's IPC agree that the Plaintiff is unable to work, primarily because of post laminectomy syndrome or failed back syndrome as the Defendant called it. Nevertheless, the Defendant determined that the Plaintiff's disabling conditions were neuro-musculoskeletal disorders. The Plan specifically limits LTD benefits if a plan participant is disabled because of a neuro-musculoskeletal disorder, and the Plan provides no exceptions to this broad limitation. (Doc. 16-4 at 7).

The Plaintiff argues that her disabling conditions should not be classified as neuro-musculoskeletal disorders. First, the Plaintiff contends no medical provider specifically diagnosed her with a neuro-musculoskeletal disorder. The Plaintiff argues "[t]he term neuro-musculoskeletal is rarely used in mainstream medicine," and that the term is used "in the context of osteopathy." (Doc. 20 at 5). According to the Plaintiff, neuro-musculoskeletal disorders are premised on dysfunctions of the "body as a whole"

or an "imbalance between the nervous system, blood vessels, musculature and skeletal framework of the body." (Doc. 20 at 8).

The real problem with Novartis' neuro-musculoskeletal disorder limitation is not that it is difficult to figure out what it means. It is neither vague nor ambiguous. Courts have had little difficulty in deciphering its meaning.[6] The problem is its breadth. It includes within its reach any neck or back injury no matter how certain it is that a Novartis employee is truly disabled. Even an employee who is a paraplegic because of spinal cord compression suffers from a neuro-musculoskeletal disorder and therefore would not be entitled to continued benefits under Novartis' Plan.

Examination of other plans containing similar limitations reveals that their *legitimate* purpose is to limit coverage for neuro-musculoskeletal conditions that cannot be confirmed by "objective evidence." See e.g. Iley v. Metro. Life Ins. Co., 261 Fed. App'x 860, 862 (6th Cir. 2008) ("The relevant limitation here limits benefits to twenty-four months if the beneficiary suffers from a neuromusculoskeletal or soft tissue disorder, *unless the beneficiary has "objective evidence" of radiculopathy.*" (emphasis added)); McClenahan v. Metro. Life Ins. Co., 631 F. Supp. 2d 1135, 1146 (D. Colo. 2009) ("[D]isability benefits are limited to 24 months during the claimant's lifetime if the claimant is disabled due to a: Neuromusculoskeletal and soft tissue disorder, … unless the Disability has objective evidence of a. seropositive arthritis; b. spinal tumors, malignancy, or vascular malformations; c. radiculopathies; d. myelopathies; e. traumatic spinal cord necrosis; or f. musculopathies."); Iliff v. Metro. Life Ins. Co., 2012 WL 709234, * 2 (E.D. Mo.) (same).

---

[6] *See infra* footnote 7.

Apparently, as best the Court can determine, the neuro-musculoskeletal limitation is a common feature of plans drafted by Metropolitan Life Insurance Company. Fairly frequently, it seems, plan participants sue Metropolitan when it relies on this limitation to deny benefits. Generally, the allegedly disabling condition in those cases is a neck or back injury. Again, in every case the Court could find the neuro-musculoskeletal limitation was limited to neuro-musculoskeletal disorders that could not be confirmed by objective evidence.[7] Under the typical Metropolitan plan, the Plaintiff almost certainly would be considered disabled because there is sufficient objective evidence of her disabling neuro-musculoskeletal conditions. *See* (Doc. 16-9 at 16).

Novartis, however, apparently has modified Metropolitan's standard neuro-musculoskeletal limitation. It has removed the objective evidence exception to the neuro-musculoskeletal limitation. Whether this is fair is a legitimate question. If Novartis' plan were an insurance policy, it is likely that state law and state insurance regulators would frown on such an attempt to deprive totally disabled insureds of their coverage.

However, as unfair as Novartis' Plan may seem, the Plaintiff cites no law, and the Court has found none, that bars Novartis from drafting its Plan any way it chooses, so long as it complies with ERISA requirements. The fact that the Plan is a contract of adhesion or that Novartis employees would be surprised to learn that their disability coverage is not what a reasonable employee would think, is of no consequence.

---

[7] *O'Callaghan v. SPX Corp.,* 442 Fed. App'x 180 (6th Cir. 2011); *Noland v. Heald College*, 551 F.3d 1148 (9th Cir. 2009); *Brien v. Metro. Life Ins. Co.*, 2012 WL 4370677 (D. Mass.); *Sedens v. Metro. Life Ins. Co.*, 2012 WL 748373 (D. Mass.); *Lanier v. Metro. Life Ins. Co.*, 692 F.Supp. 2d 775 (E.D. Mich. 2010); *Meiringer v. Metro. Life Ins. Co.*, 2009 WL 1788588 (D. Or.); *Wright v. Metro. Life Ins. Co.*, 618 F. Supp. 2d 43 (D.D.C. 2009); *Dennison v. Metro. Life Ins. Co.,* 2009 WL 77216 (W.D. N.C.); *Warden v. Metro. Life Ins. Co.*, 574 F. Supp. 2d 838 (M.D. Tenn. 2008); *Halladay v. Metro. Life Ins. Co.*, 2008 WL 1751965 (S.D. Tex.); *Wilson v. Metro. Life Ins. Co.*, 2006 WL 3702635 (E.D. Pa.).

Novartis is the master of its plan and no ERISA provision bars it from excluding coverage for neuro-musculoskeletal disorders.

Accordingly, the Defendant's decision was not de novo wrong.  The Plaintiff's lumbar spine disorders clearly are neuro-musculoskeletal conditions.  Neither the fact that Metropolitan agrees she is unable to work nor the fact that objective evidence confirms her disabling conditions helps the Plaintiff.  Novartis' Plan provides no coverage for neuro-musculoskeletal conditions after the payment of two years of LTD benefits.

Because the Court concludes that the Defendant's decision was not de novo wrong, the analysis of the denial of the Plaintiff's LTD benefits ends here.  Accordingly, the Plaintiff's Motion is **DENIED**, and the Defendant's Motion is **GRANTED**.

**SO ORDERED**, this 3rd day of January, 2013.

>                    S/ Marc T. Treadwell
>                    MARC T. TREADWELL, JUDGE
>                    UNITED STATES DISTRICT COURT